IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSETTA DEMBY and :
SHIRLEY B. WILLIAMS :
:
v. : CIVIL NO. CCB-06-1816
:
MARYLAND DEPARTMENT OF :
HEALTH & MENTAL HYGIENE, ET AL. :

...o0o...

## MEMORANDUM

Rosetta Demby and Shirley B. Williams brought suit against the State of Maryland so they could tell their story of the sexual abuse allegedly perpetrated against them and other participants in a sheltered workshop program on the Eastern Shore. After years of difficult litigation and extensive negotiation, a settlement has been achieved (subject to approval by the Board of Public Works and this court) that would implement systemic relief to protect others from such abuse in the future as well as fairly compensate Ms. Demby and Ms. Williams for what they have endured. The question before the court is whether to ratify the appointment of a guardian ad litem and find the settlement is in the best interest of the plaintiffs despite their expressed preference of proceeding to trial. For the reasons explained below an affirmative answer is the right result. I will ratify the appointment and approve the settlement, hoping that Ms. Demby and Ms. Williams will come to see the value of what they have accomplished.

## Background

Ms. Demby and Ms. Williams originally filed suit in July 2006, after filing claims with the EEOC in 2003. Ms. Demby, who has a traumatic brain injury, and Ms. Williams, who has developmental disabilities, had been participants in a sheltered workshop program at the Eastern

1

Shore Hospital Center in Cambridge, Maryland. They alleged that, during their employment at the workshop, they and other disabled individuals were routinely abused, sexually harassed, and even raped by staff at the workshop.[1]

After initial briefing and ruling on motions and, unfortunately, after certain disputes among counsel for the plaintiffs, the lead role of representation was undertaken by Jonathan C. Puth and Jeremy P. Monteiro in September 2008. They filed a motion for leave to file a second amended complaint which was granted, in part, after further briefing. As of February 2009, the second amended complaint alleged claims against the state and numerous individuals under the Americans with Disabilities Act, the Rehabilitation Act, Title VII, and 42 U.S.C. § 1983. The complaint alleged disability discrimination, sex discrimination, retaliation, and hostile work environment. Discovery proceeded; the case also was referred to Magistrate Judge Susan K. Gauvey for mediation.

Following initial mediation efforts, Judge Gauvey expressed to me her concern that Ms. Demby and Ms. Williams might not be able to comprehend the risks and benefits of the litigation and the settlement process. Mr. Puth then in December 2009 filed a motion to appoint a guardian ad litem for the limited purpose of consideration of a settlement proposal. Materials in support were filed under seal, by consent, in light of the personal nature of the records supplied in connection with the motion. Counsel cited both Rule 1.14 of the Maryland Rules of Professional Conduct[2] and Rule 17(c) of the Federal Rules of Civil Procedure.[3] A supplemental

---

1 Related cases were filed by John Alston (CCB-05-2104) and Merle Warfle (CCB-07-1626). A third plaintiff in this case, Leila Johnson, settled her claims in 2010.
2 Rule 1.14(b) provides that: "When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a

memorandum with additional documentation was filed in March 2010.

This court found appointment of a guardian ad litem justified for the limited purpose of evaluating whether the settlement proposal would be in the best interests of the plaintiffs, but required some time to locate an appropriate person to serve in that capacity. David Ferleger, Esquire, whose resume indicates his substantial qualifications, agreed to undertake the appointment and an order was issued in October 2010. Mr. Ferleger met with counsel and the plaintiffs and encouraged finalization of a written agreement encompassing the principles earlier agreed to before Judge Gauvey. A very thorough report, attaching the proposed settlement agreement and the summary Mr. Ferleger gave to Ms. Demby and Ms. Williams, was provided to the court and counsel in June 2011. The court then held a hearing on October 25, 2011, to permit Ms. Demby and Ms. Williams to express their views both as to the guardian ad litem and the settlement. Unfortunately, both plaintiffs expressed distrust of their attorneys and Mr. Ferleger and a desire to go to trial, so that their voices would be heard.

This court has great respect for the right of individuals such as Ms. Demby and Ms. Williams to control their own litigation; yet the court also has an obligation to protect the best interests of plaintiffs who, through no fault of their own, may not be able to comprehend sufficiently the risks and benefits of litigation to make a rational decision in their own interests. A decision to appoint a guardian ad litem under Rule 17(c) does not require a prior adjudication of incompetency through a state proceeding, and the Fourth Circuit has held such an appointment to be within the discretion of the district court under similar circumstances. *Fonner*

---

guardian ad litem, conservator, or guardian."
3 Rule 17 (c)(2) provides that: "A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action."

*v. Fairfax County*, 415 F.3d 325, 330 (4th Cir. 2005). Further, I recognized the appointment to be provisional, subject to hearing from the plaintiffs and also from the guardian ad litem based on his own observations and report after a period of time, and reserving to the court the final decision about whether the proposed settlement was fair and reasonable. *See Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 652-54 (2d Cir. 1999).

Summarizing the evidence before the court regarding the need for a guardian ad litem, it is appropriate to start with the complaint itself. The plaintiffs bring suit under the ADA based on their self-described mental disabilities, Sec. Amd. Cplt. at ¶ 21-37, which made them eligible for participation in the sheltered workshop program. Records were submitted under seal confirming these disabilities. Indeed at the hearing, Ms. Demby and Ms. Williams arrived in the company of an "advocate" from their therapy program, submitted letters indicating they are receiving mental health treatment for post-traumatic stress disorder and are receiving social security disability payments.

The court is aware there was an examination of the plaintiffs by a psychiatrist in 2007; although the results were not provided, it will be assumed there was no finding of general incompetence at that time. The court is also aware Ms. Demby and Ms. Williams live on their own and manage certain responsibilities independently. The more limited question is whether they are presently capable of comprehending the risks and benefits of litigation and the proposed settlement sufficiently to make a rational decision in their own interests. In concluding they are not, the court relies substantially on the observations of the guardian ad litem outlined in his June 2011 report, which will be attached as Exhibit A under seal to this memorandum, the observations of counsel, as expressed in their memoranda and at the hearing, and my own

4

conversations with Ms. Demby and Ms. Williams at the hearing. With great respect for their determination to speak out, I will now briefly summarize the terms of the settlement they seek to reject and the risks of proceeding forward with the litigation. These terms and risks are thoroughly and accurately explored in Mr. Ferleger's attached report.

First, the proposed settlement achieves significant monetary compensation for the plaintiffs.[4] Subject to approval by the Board of Public Works, and without admitting liability, the state has offered to pay a total of $425,000 to settle the claims. Ms. Demby and Ms. Williams would each receive approximately $126,825 after attorneys' fees and expenses.[5] The state also will settle a claimed substantial lien asserted by the plaintiffs' first counsel, and will not seek to recover by way of subrogation any of the money to be paid to the plaintiffs.[6] Second, the state has agreed to significant systemic relief, including the formation of a Task Force to propose regulatory actions to insure training and prompt reporting of sexual abuse at various state facilities including sheltered workshops. Against the certainty of this monetary and systemic relief, the plaintiffs face great risk continuing with the litigation, as there are legal and evidentiary issues that might lead to summary judgment, a defense verdict, or reversal of a plaintiff's verdict on appeal. There is no indication that the plaintiffs understand and are rationally evaluating those risks in seeking to proceed to trial; nor do they appear to understand how many of their expressed goals they will accomplish, both personally and on behalf of others, through this settlement. Accordingly, I remain convinced that, under the particular circumstances of this case, appointment of a guardian ad litem was and is warranted for the

---

4 The proposed settlement is attached as Exhibit B to this Memorandum.
5 The attorney's fees to be paid represent only about 20% of "lodestar" figure. *See* Ferleger Report Ex. B.
6 In approving this settlement as fair, reasonable, and adequate the court assumes that payment of the settlement proceeds shall **not** be considered by the state as a resource disqualifying the plaintiffs from receipt of Medicaid

limited purpose of evaluating the settlement and specifically determining whether the settlement is in the best interests of the plaintiffs.

Mr. Ferleger has determined for the reasons explained in this report that the settlement is indeed in the best interests of the plaintiffs. There is an analytically independent question for the court to answer of whether the proposed settlement is "fair, reasonable, and adequate." *Neilson*, 199 F.3d at 654; *cf. LJ v. Massinga*, 699 F.Supp 508, 513 (D. Md. 1988). That the settlement is fair is supported by the arms'-length and protracted negotiation engaged in on both sides by experienced counsel with the assistance of an experienced judicial officer. The proposed resolution also followed significant discovery and motions practice. The adequacy of the settlement is supported by the balance of risks and benefits discussed above. Even were the plaintiffs to prevail at trial, a lengthy delay in their recovery would be likely. *See Neilson*, 199 F.3d at 654.

Accordingly, the court will ratify appointment of David Ferleger, Esquire, as guardian ad litem for the plaintiffs, accept his judgment that the proposed settlement is in the best interests of the plaintiffs, and further approve the proposed settlement as fair, reasonable, and adequate. Mr. Ferleger is authorized to sign the Agreement on behalf of the plaintiffs so that it may be presented to the Board of Public Works.

---

benefits.

A separate Order follows.

<u>November 21, 2011</u>                                          <u>            /s/            </u>
           Date                                                           Catherine C. Blake
                                                                          United States District Judge